Jacob Cohen, Appellant, v. Millie Cohen and William Jacobs, Appellees.

Gen. No. 39,436.

40 

 Heard in the first division of this court for the first district at the April term, 1937. Opinion filed June 28, 1937. Rehearing denied July 10, 1937.

Levy & Schmetterer, of Chicago, for appellant.

Walter A. Rooney, of Chicago, for appellees.

Mr. Justice McSurely delivered the opinion of the court.

Petitioner, in a chancery proceeding instituted by him, was found to be in contempt of court for failure to obey a decree entered in the cause and was ordered committed to the jail of Cook county for six months, there to remain until he pay the sum of $844.85, and he appeals.

The proceedings are somewhat unusual and raise the question whether one can be imprisoned for contempt for refusing to obey an order entered in a proceeding to release dower brought under section 17, chapter 68, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 64.17. This provides in substance that when the husband or wife is insane, and shall have been insane continuously for one year and therefore incapable of executing a deed relinquishing dower, a petition may be filed on the chancery side of the court in the county where the real estate to be affected is situated, setting forth the facts, describing the real estate and asking for an order authorizing the applicant, or some other person, to execute a deed of conveyance and thereby relinquish his or her right of dower in the real estate.

Petitioner alleged that he was the owner of an undivided half in fee simple of certain real estate in Cook county, describing it, the other undivided half being owned by his brother, Louis B. Cohen; that as partners he and his brother had been for some years

conducting a retail furniture business on the premises, and that they deemed it advisable to organize a corporation to take over the business of the partnership; that a corporation was organized named Cohen Brothers Furniture Company, and the capital stock was fully paid in; that the brothers desired to erect a new building on the property by procuring a loan on the premises; that it was necessary in order to procure a loan that the corporation have clear title to the premises.

Petitioner stated that he was married and his wife's name is Millie Cohen; that she has been insane for more than one year preceding the filing of the petition, to wit, 17 years; that she is incapable of executing and joining in the warranty deed made by petitioner and Louis B. Cohen and Sarah Cohen, his wife, conveying title to the real estate to the corporation; that it was necessary for petitioner's wife to execute a warranty deed of the real estate so as to relinquish her dower and homestead rights to the corporation; that the real estate was worth approximately $25,000, incumbered with a $10,000 first mortgage; that there were three children of the marriage, all living with petitioner, who is providing for the support of defendant Millie Cohen, and stands ready to do equity in the premises.

The petition prayed for a decree authorizing some discreet and proper person to execute, acknowledge and deliver a warranty deed on behalf of petitioner's wife and that a guardian *ad litem* be appointed for her.

The appearance by attorney of Millie Cohen was filed and a decree, consented to by both parties, was entered November 15, 1927. Apparently the decree was drawn up by the attorneys for petitioner. It recites the substance of the petition and finds the facts as there stated. Master in chancery Isidore Brown was authorized to execute the deed of conveyance in the name of Millie Cohen.

Section 20, chapter 68, also provides, as one of the conditions of granting the decree, that the court shall require of the petitioner "such security for the protection of the interests and for the proper support of such insane person as the court shall deem satisfactory. . . ." In pursuance of this the decree ordered the petitioner to deposit with the clerk of the court $7,000 worth of common stock of the furniture company, to be held by the clerk until the further order of the court. The decree also provided that should Millie Cohen predecease petitioner, the stock was to be returned to him, but should she survive petitioner, then the stock was to be turned over to a duly appointed and qualified conservator for her. The decree appointed William Jacobs, who is now a defendant, guardian of Millie Cohen.

This litigation centers around the next provision of the decree whereby it is ordered that petitioner, commencing December 1, 1927, and until the further order of the court, pay to Jacobs, the guardian, $150 a month for the support of Millie Cohen, as she is not living with petitioner. The court retained jurisdiction for the purpose of entering such orders as might be necessary in the case.

The shares of stock in the corporation were deposited with the clerk of the court and are still there. No question is raised as to this. The part of the decree requiring petitioner to pay an amount each month for the support and maintenance of Millie Cohen is questioned.

For a short time after the entry of the decree the petitioner made monthly payments to the guardian of his wife as required by the decree but subsequently became in default, and in November, 1933, the guardian filed a petition in the cause setting up that petitioner was in default in payment of the monthly instalments

and alleged that petitioner wilfully and maliciously disregarded the decretal order in this respect; the petition prayed that he show cause why he should not be held in contempt of court.

Petitioner Cohen filed what is called an amended and supplemental cross-petition in which he asserted that the $7,000 of stock deposited with the clerk of the court was for the support and maintenance of his wife, and that she can look only to this, as the provision of the decree providing that petitioner should pay monthly for her support, in so far as it attempted to fasten a personal liability on petitioner, punishable by contempt proceedings in case of default, is void.

The matter was referred to a master in chancery who took evidence and made his report, and on June 6, 1935, the court entered an order which found that the arrearages had been settled and that the amount of monthly payments to be made by petitioner be reduced to $100. No appeal was taken from that decree.

April 28, 1936, Jacobs, as guardian of Millie Cohen, filed another petition, asserting that petitioner was in default under the decree ordering him to pay $100 a month, and that it was necessary for the guardian to borrow money to support his ward. Again a rule was asked requiring petitioner Cohen to show cause why he should not be punished for contempt for failure to comply with the order of June 6, 1935. To this he filed his answer, alleging that the decree was not under a bill for divorce or separate maintenance but only to bar dower of Millie Cohen, and that stock to protect her interest and as security for the dower has been deposited with the clerk of the court and is now in his possession.

The answer further asserted that the original petition, filed August 19, 1927, was filed under a mistake of fact and law; that such proceedings were not neces-

sary, as the property which was the subject matter of the petition was partnership property and therefore not subject to any dower rights of the wife of either petitioner Jacob Cohen or Louis B. Cohen.

The answer again asserted that the court had no power to fix any personal liability upon petitioner for the support of Millie Cohen, as the shares of stock deposited with the clerk were security for this; that petitioner was unable to pay $100 a month for the support of his wife, as required by the order of June 6, 1935. The answer asked that this order for the payment of $100 be vacated. This was referred to a master who filed his report January 5, 1937, finding that the petitioner had admitted of record, and the evidence showed, that his financial condition was the same at the time of filing this report as it was on June 6, 1935, when the decree was entered fixing the monthly payments at $100; and since that decree has never been modified it is still in full force and effect.

January 13, 1937, the chancellor, after hearing exceptions to the master's report, found that there was due from petitioner for the support of defendant Millie Cohen $580; that the attorney for the guardian had earned solicitor's fees in this matter amounting to $200, which should be taxed as costs to be paid by petitioner, and in addition the master's fees and charges; the court further found that no sufficient cause had been shown why these sums should not be paid, and that no showing has been made that petitioner is unable to pay them, but that he wilfully fails and refuses to obey the decree of the court. Petitioner was found guilty of contempt and sentenced to imprisonment.

Petitioner appealing first says that he filed his petition under the mistaken idea that a dower or homestead right existed in his wife Millie which necessitated the proceedings brought by him; that as a fact the

real property was partnership property belonging to the partnership of himself and his brother Louis; that under the Partnership Act, ch. 106a, ¶¶ 8 and 25 (e), Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 97.08, 97.25, the partner's right in partnership property is not subject to dower. See also *Wharf v. Wharf,* 306 Ill. 79. Hence, petitioner argues, the court had no jurisdiction of the subject matter. To this defendants reply that there is no evidence in the record as to when the partnership of Cohen Brothers was formed; that so far as appears Millie Cohen had acquired an inchoate right of dower and homestead in the property prior to the formation of the partnership. In the *Wharf* case cited the partnership was formed for the specific purpose of purchasing real estate with partnership funds. The instant petition contains no allegation that the real estate in question was purchased or acquired by the partnership. Mechem on Partnership (2nd ed.), page 146, sec. 165, says that where land is owned by a husband and the wife has acquired an inchoate right of dower in it before the formation of the partnership her right is ordinarily unquestionable, citing *Grissom v. Moore,* 106 Ind. 296, *Chase v. Angell,* 148 Mich. 1, *and Ratcliffe v. Mason,* 92 Ky. 190, 195. In the last named case it is specifically held that when title is once vested in the husband the dower right of the wife cannot be defeated by subsequent appropriation of the land for partnership purposes. And in *Grissom v. Moore, supra,* the court said the husband could not defeat the dower of his wife by any agreement to devote the land to the purposes of a partnership, "nor by any other agreement short of a conveyance in which she should join." See also *Bopp v. Fox,* 63 Ill. 540, and *Galbraith v. Tracy,* 153 Ill. 54. The petition sworn to asserted that Millie Cohen had a dower interest in the real estate. The sole purpose of the petition was to effect a release and conveyance

of this interest, without which no loan could have been procured. The petition made out a case for the exercise of the jurisdiction of the court.

In *O'Brien v. People,* 216 Ill. 354, it was held that "Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case . . . but jurisdiction of the class of cases to which the particular case belongs," and does not depend upon the sufficiency of the pleadings nor the rightfulness of the decision. To the same effect are *Figge v. Rowlen,* 185 Ill. 234, 240, *Woodward v. Ruel,* 355 Ill. 163, 168, and *Wilson Bros. v. Haege,* 347 Ill. 140. Obviously the trial court had general jurisdiction and power to grant the relief prayed for in the petition filed under section 17, chapter 68.

As we have indicated, the prinicpal contention is as to the validity of that part of the decree which ordered the petitioner to pay a monthly sum for the support of his insane wife. Section 20 of the act, as above stated, requires the petitioner in such a proceeding, as one of the conditions of granting the relief sought, to present not only security for the protection of the interests of the insane person, but also security "for the proper support of such insane person as the court shall deem satisfactory, and may from time to time renew or change the same, or require additional security."

The court upon hearing decreed that the petitioner deposit with the clerk shares of stock of the furniture company, and as additional security for the support of the insane person ordered that petitioner pay the sum of $150 monthly to her guardian, William Jacobs, appointed by the court. The record shows that petitioner gave his consent and approval to the entry of this decree. Clearly the statute authorized the court to require such security for the support of the insane per-

son as the court should deem satisfactory. In the instant case the court deemed the questioned order to be necessary and the petitioner agreed to this. For a short time after the entry of the decree petitioner made payments monthly to his wife in full compliance with the decree and the record discloses that more than once petitioner admitted that the court had jurisdiction of the subject matter, as in his cross-petition filed November 28, 1933, he alleges the attempt of the guardian of Millie Cohen to proceed against him in the municipal court of Chicago and alleges that the circuit court should dispose of this matter as it "has complete jurisdiction to dispose of the entire subject matter." Moreover, in the hearing before the master petitioner's attorney admitted that the court was justified in ordering petitioner to make monthly payments. In *Bergman v. Rhodes,* 334 Ill. 137, 143, it was held that "A decree so entered by consent cannot be reviewed by appeal or writ of error. (*Paine v. Doughty,* 251 Ill. 396; *Galway v. Galway,* 231 id. 217.) It can only be set aside by an original bill in the nature of a bill of review."

Petitioner asserts that the guardian must look only to the common stock deposited with the clerk, but no cases are cited to support this view nor even suggesting that the court had no power to enter the order for the monthly payments. We hold that this part of the order was valid and binding upon petitioner.

It is said that the evidence taken before the master in chancery, Samuel B. Epstein, shows that petitioner was unable to pay the $100 a month for the support of Millie Cohen; that his income was only $25 a week and he had no other property or source of income. The master and the chancellor took the position that as the order for payment of $100 a month was entered June 6, 1935, and petitioner did not appeal from this,

and there was no change in his financial condition between the entry of that order and the order of commitment entered January 13, 1937, the order of June 6, 1935, was *res adjudicata* on the question of petitioner's ability to pay.

It has been frequently held that a court may change such an allowance only where the circumstances have changed since the former order; that the court after a lapse of time has no power to reverse or modify a decree for the payment of money upon the same facts that existed at the time of the entry of the decree. *Cole v. Cole,* 142 Ill. 19 (23, 24); *Pribyl v. Pribyl,* 250 Ill. App. 349, and *Helkelkia v. Sonzinski,* 223 Ill. App. 30.

Moreover, the testimony of the petitioner as to his financial condition might reasonably fail to impress the court. He said that one time he got a note for $6,000 evidencing a loan for this amount, but that he burned the note. He also destroyed another note of the same kind for $2,000. When pressed to reveal where he kept his money he said he kept $2,000 of it in a cook stove. The court was not obliged to accept his statement as to his inability to pay.

Counsel for petitioner says that because the proceeding was not brought under a divorce statute or under a statute providing for separate maintenance, the chancellor could not enter any order for the support of the insane wife which could be enforced by a contempt commitment. Section 42 of the Chancery Act, Ill. State Bar Stats. 1935, ch. 22, ¶ 42; Jones Ill. Stats. Ann. 106.06, provides that the court may enforce its decrees "by attachment against the person, by fine or imprisonment, or both, . . . and by the exercise of such other powers as pertain to courts of chancery, and which may be necessary for the attainment of justice." See also section 47 of the same act, Ill. State Bar Stats.

1935, ch. 22, ¶ 47; Jones Ill. Stats. Ann. 106.10. Petitioner's argument seems to assume that the power of a chancellor to commit for contempt in a divorce or separate maintenance proceeding is by virtue of some power granted by the special statute covering such proceedings. We find no such provision in the statute. The right to enforce its decrees is especially conferred upon the court where the rights of a wife to support are involved. As was held in *Harding v. Harding,* 144 Ill. 588, 597, citing Bishop on Marriage and Divorce, the right to enforce such decrees "springs necessarily from the legal relation of the parties. . . ." In *Schmidt v. Cooper,* 274 Ill. 243, 250, the court said: "The power to punish for contempt is inherent in every court of justice, and necessarily includes all acts calculated to impede, embarrass or obstruct the court in the due administration of justice, and the power is independent of statutory provisions." See also *Clark v. People,* 1 Ill. 340, *People v. Seymour,* 272 Ill. 295, *Leopold v. People,* 140 Ill. 552, and *Swedish-American Tel. Co. v. Fidelity & Casualty Co. of New York,* 208 Ill. 562, 573. And in *State of Illinois v. Froelich,* 316 Ill. 77, 83, it was held that the power of courts to punish for contempt does not depend on constitutional or legislative grant, "but is inherent in all courts as necessary for self-protection and as an essential auxiliary to the administration of the law." *People v. Panchire,* 311 Ill. 622; *People v. Peters,* 305 Ill. 223.

The court has the general power to enforce its orders even in an ordinary civil action. How much more is there reason to uphold the authority of the court to punish for contempt where the purpose of the order disobeyed is to protect a wife unable to exercise mental faculties. Insane persons have been from time immemorial the special consideration of the courts and the protecting arm has been extended in their behalf. It

would be most unjust to hold that a court could not compel a husband, able so to do, to provide means of support and maintenance to his insane wife.

The order appealed from is in accordance with the law, the evidence and every principle of equity, and is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.