No. 44,728

Nancy B. Herzmark, *Appellee*, v. Edgar E. Herzmark, *Appellant.*

(427 P. 2d 465)

Opinion filed May 13, 1967.

*Peter A. Martin,* of Olathe, argued the cause and was on the brief for the appellant.

*John H. Johntz, Jr.,* of Olathe, argued the cause, and *Howard E. Payne, W. C. Jones, Robert P. Anderson, Keith Martin, H. Thomas Payne, John T. Flannagan* and *Edward M. Boyle,* all of Olathe, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: This appeal is from an order modifying the amount of payments for alimony and child support.

The appellee, Nancy B. Herzmark, obtained a decree of divorce from the appellant, Edgar E. Herzmark, in the district court of Johnson County, Kansas, on February 16, 1965. Custody of the minor child, Jody Ann Herzmark, was given to the wife. A division of property was decreed and the husband, Edgar, was ordered to pay alimony and support payments. The parties had been married for almost sixteen years.

Edgar remarried in July, 1965, and Nancy remarried in November, 1965. Shortly after Nancy remarried a motion to modify the amount of alimony and support payments was filed by Edgar. After a full hearing on the motion a reduction of the amount payable was ordered. The husband appeals.

The financial statement of the parties at the time of the divorce indicated a net worth of approximately $64,000. The personal earnings of the husband averaged $1800 per month in 1963, and $1000 per month in 1964. He anticipated earnings in 1965 of $4800 plus income of $600 per month from payments to be received on a note of $33,100. The note represented the amount owing from the sale of his stock in a family business corporation and was payable without interest.

The decree of divorce provided for a division of property. The wife received the family residence which she sold and she received $9,000 net therefrom. In addition she received the contents of the residence valued at $5000 plus a car valued at $1440. The husband was given the balance of the property subject to debts. He was directed to deliver the $33,100 note to the clerk of the district court. The wife was given a lien upon the note for all payments due her under the decree. The defendant was ordered to pay $600 per month for the support of plaintiff and minor child *until the further order of the court.*

On the motion to modify it was stipulated that the court review all evidence introduced at the divorce hearing concerning the income and property of the parties and the pertinent evidence be considered by the judge. Additional testimony was given by the parties.

The plaintiff, Nancy, testified she was married to Simon Kraft

on November 10, 1965. Simon Kraft is sales manager for a tool company and earns $917 per month. They are living in a two bedroom house which rents for $125 per month. Jody, the minor daughter of Edgar E. Herzmark, lives with them. Mrs. Kraft estimated that expenses for Jody amount to $40 a month for food, $20 for clothing, $17 for her share of utilities and $25 for transportation. She testified other incidental expenses for Jody varied in amount from $65 to $146 per month. Mrs. Kraft has $8500 from the sale of the residence in a savings account.

The defendant testified his earned income in 1965 averaged $600 per month and $600 per month was paid on the note. He further testified he remained a member of the Oakwood Country Club and his present wife was paying the dues. Prior to the divorce action his income was close to $20,000 annually and he had fringe benefits such as the complete use of a company car, hospital and medical insurance and company paid life insurance. He no longer has these benefits. At the hearing for modification he testified his daughter, Jody, was nine years old. He estimated the necessary expense of her support to be $75 per month. In addition he carried a life insurance policy for his daughter costing $23.93 per month, and she was included in benefits under his hospital and medical insurance policy. He was working for two companies. His combined salaries covering the period from January 1 through November 15, 1965, totalled $6880. There was evidence at the divorce hearing that he was capable of earning as much as $20,000 per year.

The district court modified the decree of divorce as it pertained to the alimony and support payments. The court found the wife had remarried in November 1965. The pertinent parts of the order modifying the decree are as follows:

"9. The Court finds after careful consideration of said motion and the evidence of the property of the parties at said divorce hearing, that said support order should be modified as follows:

"a. That a reasonable amount necessary for the support of the minor child, taking into consideration her station in life and needs, without provisions for education, to be the sum of $150.00 per month, commencing on January 1, 1966.

"b. That provisions should be made for the education of said minor during her minority as follows, to-wit:

"That the Defendant shall forthwith establish in some banking institution in Johnson County, Kansas, an account to provide funds for the proper education of said minor and shall forward to the Clerk of this Court each month, commencing January 1, 1966, the sum of $150.00 made payable to such desig-

nated banking institution, to be deposited in said account by said Clerk until a total of forty (40) such deposits shall be made, said account to be arranged to draw interest thereon. That within one year after said minor graduates from high school and enrolls in a college, said minor shall be entitled to withdraw from said funds an amount not exceeding $400.00 each calendar year for tuition and necessary books and the further sum of $100.00 per month so long as she remains in college or until the funds and accumulated interest thereon are depleted or until said minor attains legal majority. In the event said minor shall not enroll in college following one year from graduation from high school or should she voluntarily withdraw from college after having enrolled, the balance of said fund remaining on deposit shall thereupon be made payable to said Defendant, his heirs or assigns. That said banking institution should receive a copy of this order from the Clerk of this Court and receive such deposits and make such disbursements on the terms and conditions of this order; that the Defendant shall notify the Clerk of the designation of such banking institution. See *Allison v. Allison,* 188 Kan. 593, *Gard's, Kansas Code of Civil Procedure,* pages 729-730 and K. S. A. [1965 Supp.] 60-1610 (*a*).

"c. That the Defendant should pay to the Plaintiff an allowance for future support, denominated as alimony the sum of $100.00 each month commencing on the 1st day of January 1, 1966, with a like sum each month thereafter until the further order of the Court.

"10. That Plaintiff should continue to have a lien on said note herein mentioned for said child support and alimony payments and that the remaining provisions of said decree should not be affected by this modification order unless same is so specifically provided herein."

After a motion for rehearing was presented and overruled the court allowed Nancy Kraft $200 attorney fee for the attorney employed by her to defend against the motion to modify. The defendant appeals from the order making this allowance and from the order modifying the alimony and support payments.

The defendant contends on appeal the trial court erred: (1) In requiring payment of alimony after the remarriage; (2) In requiring an excessive amount of child support to be paid; (3) In requiring payment into an educational fund for the child, and; (4) In requiring defendant to pay plaintiff's attorney fee incurred on the motion to modify.

Significant change in our laws relating to divorce and alimony has come about by the enactment of the recent code of civil procedure effective January 1, 1964. K. S. A. 1965 Supp. 60-1610 provides in separate sections for (*a*) care of minor children, (*b*) division of property and (*c*) maintenance. Care should be exercised in drawing decrees of divorce requiring future payments in cash. Future amounts payable for care of a minor child may be modified on

subsequent order of the court to advance the welfare of the minor child. Amounts payable for future support denominated as alimony may now be modified on subsequent order of the court under the provisions of K. S. A. 1965 Supp. 60-1610 (*c*). (*Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677; *Clugston v. Clugston,* 197 Kan. 180, 415 P. 2d 226; *Craig v. Craig,* 197 Kan. 345, 416 P. 2d 297.)

The provisions of the statute relating to the division of property permits the court to equalize such division of property by requiring either party to pay such sum as may be just and proper. (K. S. A. 1965 Supp. 60-1610 [*b*].) When the original decree of divorce is entered care should be exercised so that any payments to equalize the division of property are not included with payments for future support denominated as alimony.

In the present case it should be noted that the points raised on appeal do not concern the previous division of property. The payments which defendant seeks to have modified relate specifically to support of the child and future support of the wife. Such payments were not decreed for the purpose of equalizing a division of the property.

The first point raised by defendant concerns the allowance to plaintiff of alimony after she remarried. The court in its order of modification directed payment of alimony of $100 each month commencing January 1, 1966, until the further notice of the court.

In *McGill v. McGill,* 101 Kan. 324, 166 Pac. 501 [1917] the court said:

"Whatever may be thought or should be thought about the policy or propriety of requiring a divorced husband to continue payments of alimony to a wife, remarried to another man, the authorities are preponderant in support of the doctrine that her remarriage does not of itself operate as a release of the obligation, although it may well be a ground of application for discharging the defendant from further payments. (Citations.)" (p. 327.)

*McGill* was decided under prior statutes and arose from an entirely different factual situation. It is not controlling authority in the present case but it is of interest.

K. S. A. 1965 Supp. 60-1610 (*c*) relating to maintenance now reads:

"The decree may award to either party an allowance for future support denominated as alimony, in such amount as the court shall find to be fair, just and equitable under all of the circumstances. The decree may make the future payments conditional or terminable under circumstances prescribed therein. The allowance may be in a lump sum or in periodic payments or on a percentage

of earnings or on any other basis. At any time, on a hearing with a reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the alimony originally awarded that have not already become due, but no modification shall be made, without the consent of the party liable for the alimony, if it has the effect of increasing or accelerating the liability for the unpaid alimony beyond what was prescribed in the original decree."

The statute specifies that this is to be "an allowance for future support." The word alimony used in our statute comes from the Latin *"alimonia"* meaning sustenance. It indicates sustenance or support of the wife by her divorced husband.

Under some of our more recent cases, concerning the allowance of alimony, changes in the law have been mentioned.

In *Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478, it was pointed out that alimony may be awarded to a party irrespective of which party is found to be at fault.

In *Zeller,* certain factors were suggested as affecting the amount of alimony, including the needs of the wife.

In *Moran v. Moran,* supra, the court discussed the provisions in the statute for maintenance and said:

"Although the statute is new—and obviously the trial court has great latitude in providing for 'future support'—the general guide lines recognized as proper by this court in cases arising under the prior statute (G. S. 1949, 60-1511), which authorized alimony only where divorce was granted for the fault of the husband, are not to be discarded." (p. 385.)

In *Clugston v. Clugston,* supra, the court quoted with approval from *Moran* to the effect that a plain reading of the statute indicates its terms are to be invoked when one party's needs and the other party's ability to pay are such that support should be ordered.

In *Craig v. Craig,* supra, an allowance for alimony was reduced from $1200 to $850. A primary factor compelling this reduction was a showing of the needs of the wife.

In *Moran* and *Craig* the monthly payments of alimony were awarded until death or remarriage of the recipient. Remarriage was not a limitation specified in the original decree of divorce in the present case. The decree in the present case provided for payments of alimony "until the further order of the court."

The evidence introduced on the motion to modify establishes remarriage of the wife. There is no showing of continued need for support from the defendant. Simon Kraft, present husband of Nancy, is earning $917 per month and no special circumstances of

need appear in the record. We are squarely confronted with the question of whether an award of alimony under K. S. A. 1965 Supp. 60-1610 (*c*) made payable until further order of the court may be continued after a valid remarriage of the recipient when it is shown the present husband of the recipient is fully capable of fulfilling his duty to support the wife.

We find nothing in our statute which specifically provides for termination of alimony payments on remarriage of the recipient. Yet alimony is referred to in the statutes and recent cases as an allowance for future support. It means sustenance or support of the wife by her divorced husband. The duty of the former husband to pay alimony arises from the marital relation which previously existed between the parties. It is distasteful to permit a divorced wife to hold both her former husband under a decree of alimony and her present husband under the marital duty of support which inheres in every marriage contract.

The cases from other jurisdictions are collected in the annotation appearing in 48 A. L. R. 2d 270. It is a general principle in many courts that it is contrary to public policy for a woman to receive support from both a former and present husband.

A wide discretion has been given the court by the legislature in determining an amount which is equitable, in decreeing circumstances of termination, in requiring payment of a lump sum, periodic payments or on a basis of percentage of income. The court may later modify the amounts and conditions for payment. Restrictions against increasing or accelerating the liability are prescribed.

We do not feel that our statute indicates an intention by the legislature to have alimony payments automatically terminate on remarriage of the recipient. The court which decrees alimony in the first instance should not be powerless to act under its equitable powers in event factors exist which would require special consideration. Automatic termination would raise problems concerning subsequent inquiry into the validity of a remarriage which might well be determined on motion to terminate the alimony payments.

After considering the statute and the decisions of this court we believe the remarriage of a divorced person, who is the recipient of alimony payments, does not of itself terminate the right to alimony. However, proof of a valid remarriage does make a prima facie case which requires the court to end it, in the absence of proof of some extraordinary circumstances justifying its continuance.

It is repugnant to a sense of justice for one man to be supporting the wife of another who has recently assumed the legal obligation for her support. Under our statute which permits an award of alimony to either party to the marriage it would be even more repugnant for a man to receive support from both wife and former wife.

Proof of remarriage of the plaintiff to Simon Kraft made out a prima facie case for termination of future alimony payments. The burden of proving special circumstances justifying any continuance in the present case rests with the plaintiff, Nancy Kraft. There is no evidence in the record upon which the court could justify continuation of the alimony payments of $100 per month. The decision of the trial court in regard to payment of alimony after remarriage is erroneous and payment of alimony to Nancy Kraft should be terminated.

Defendant next contends the trial court abused its discretion by ignoring evidence of the actual expenses for child support. We previously reviewed the evidence relating to actual expenses for support in the light of testimony concerning defendant's earning capacity and present income.

Matters concerning support of minor children and any modification or change of any order in connection therewith rest in the sound discretion of the trial court under K. S. A. 1965 Supp. 60-1610 (a). (Kimbell v. Kimbell, 190 Kan. 488, 376 P. 2d 881; Grunder v. Grunder, 186 Kan. 766, 352 P. 2d 1067; Goetz v. Goetz, 184 Kan. 174, 334 P. 2d 835.)

The amount of the award is not excessive under the evidence presented and considered by the trial court. No abuse of discretion has been shown by the defendant and the order of the trial court allowing $150 per month for support of the minor child is approved.

The defendant challenges the order of the court requiring him to pay an additional sum of $150 per month to provide a $6000 college education fund for his minor daughter. He argues that K. S. A. 1965 Supp. 60-1610 (a) permits the court to set aside property for the *support* of the child but not for future education.

K. S. A. 1965 Supp. 60-1610 (a) in pertinent part provides:

"The court shall make provisions for the custody, support and education of the minor children, and may modify or change any order in connection therewith at any time, and shall always have jurisdiction to make any such order to advance the welfare of a minor child if (i) the child is physically present in the

county, or (*ii*) domicile of the child is in the state, or (*iii*) the court has previously exercised jurisdiction to determine the custody or care of a child who was at such time domiciled in the state. In connection with any decree under this article, the court may set apart such portion of the property of either the husband or the wife, or both of them, as may seem necessary and proper for the support of all of the minor children of the parties, or of either of them . . ."

Defendant points out the statute relates to custody, support and education when authorizing the court generally to provide for the children, whereas the provisions for setting property apart refers only to support. He defines the word property to mean accumulated property as distinguished from current income. Defendant insists the court abused its discretion in requiring him to establish this fund from accumulated property when the child was only nine years old and there was no showing of aptitude, desire and capacity for college.

An almost identical arrangement to provide for education of a minor child was approved by this court, with certain exceptions to be noted later, in *Allison v. Allison,* 188 Kan. 593, 363 P. 2d 795. The *Allison* case was relied upon and cited by the trial court when the present provision for education was made.

In *Allison* support payments were increased by the trial court and the father was directed to make payments into a fund for the child's college education. On page 601 of the opinion the court said:

"Courts must take judicial notice of changing times and conditions. A college education has gradually become almost a necessity for our young people to find suitable placement in our American society and economy. Where the parents' economic circumstances are adequate it is commonplace to send their children to college. Family budgets are so arranged that for many years prior to a child's actual enrollment in college, funds are set aside in savings accounts and insurance policies purchased to assure a college education for the child. We think the provisions of 60-1610, *supra,* are sufficiently broad to authorize a trial court to make provision for the college education of a child, where the evidence shows a plan for such education, as here, and ability on the part of a parent, such as the appellant in this case, to provide such education."

Certain limitations or guide lines were drawn in *Allison.* Any new order must be prospective and cannot change amounts past due. Such an educational fund may not extend beyond or make provision for a child of the marriage beyond minority. In event the child does not attend college for the period intended the fund should be made returnable to the funding party, his heirs or assigns.

Such a plan must be definite and have for its purpose a suitable college education for the child. The plan must be reasonable within the parent's ability to provide.

An examination of the provisions made by the trial court for the college educational fund indicates that defendant is to make forty monthly payments of $150 to be held by a banking institution. The account is to draw interest. If the child enrolls in college within one year after graduation from high school she may withdraw $400 each calendar year for tuition and books and a further sum of $100 per month so long as she remains in college. Such payments are limited to the period of her minority. If the child does not enroll in college within one year of graduation from high school or having enrolled voluntarily withdraws from college the balance of the fund is made payable to the defendant, his heirs or assigns.

The plan appears reasonably suited to the purpose of providing for the child's education. It is within the guide lines of *Allison* and does not provide for payments after the child reaches her majority. Under the court's order modifying the original decree the monthly payments of $150 for support and $150 to establish the educational fund continue to become a lien on the note held by the clerk of the district court. The note in the principal amountof $33,100 was awarded to the defendant as his separate property. The note was not set aside for the support or education of the child. The provisions made for the child are within the general authority granted in the first part of the statute K. S. A. 1965 Supp. 60-1610 (*a*). Even though the child was only nine years old and no evidence was introduced showing desire and aptitude for college the court made proper provision for the fund to revert to defendant at a definite time in event the child did not pursue a college education. The eventual size of the fund does not appear excessive in view of present college costs and evidence of defendant's ability to provide for such education.

Defendant's final contention relates to an allowance of $200 to plaintiff's counsel for services rendered on motion to modify. He argues the right to require payment of counsel fees is based upon the existence of the marital relation and upon remarriage of the wife no basis remains to require payment from defendant. He further contends the wife has adequate savings from which to pay her own attorney.

The defendant does not contend that the amount is unreasonable in the light of actual services rendered by the attorney in defending against the motion to modify.

K. S. A. 1965 Supp. 60-1610 (*f*) provides:

"*Costs and fees.* Costs and attorneys' fees may be awarded to either party as justice and equity may require."

This section relates to the preceding sections of the statute which cover the care of minor children, alimony and orders of modification thereof. The court is given wide discretion in this matter. The authority granted is more general than that given by our previous statute on the subject. (G. S. 1949, 60-1507.)

In *Kessler v. Kessler*, 188 Kan. 255, 257, 362 P. 2d 21, we said:

"It is the law of this state that a wife may recover reasonable attorney fees from her husband when she is compelled by his wrongs to employ counsel to protect her rights. When a former wife seeks to defend or enforce a judgment, attorney fees are properly allowable. (*Matson v. Matson*, supra). In other words, after a divorce is granted, attorney fees are allowable if a wife is forced, due to the action or inaction of her former husband, to come into court to protect a right granted her by the judgment in a divorce action."

(*Hipple v. Hipple*, 128 Kan. 406, 278 Pac. 33; *Bush v. Bush*, 158 Kan. 760, 150 P. 2d 168; *Davis v. Davis*, 148 Kan. 826, 84 P. 2d 849. See, also, *Matson v. Matson*, 171 Kan. 112, 229 P. 2d 756.)

The former wife, Nancy, was required to employ counsel to defend the judgment rendered in her favor in the divorce proceeding. The allowance for attorney fee was reasonable and within the discretion of the trial court.

The order of the trial court requiring defendant to pay alimony after remarriage of the wife is reversed. The balance of the order relating to child support, educational fund and attorney fee is affirmed.

FATZER, J., dissenting in part and concurring in part: I must respectfully dissent from the court's holding in paragraphs 2 and 3 of the syllabus and the corresponding portions of the opinion. In my judgment, proof of remarriage of a recipient of alimony operates to release the obligation to pay alimony and terminates future alimony payments.

I concur with the court's well reasoned opinion in all other respects.

SCHROEDER and FONTRON, JJ., join the foregoing dissenting and concurring opinion.